# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| PAULA R. TATE, | ) | No. CV 11-7971-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

## PROCEEDINGS

Plaintiff filed this action on October 4, 2011, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 3, 2011, and November 10, 2011.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 26, 2012, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

**II.**

**BACKGROUND**

Plaintiff was born on November 5, 1965.  [Administrative Record ("AR") at 69-70.]  She completed three years of college [AR at 156], and has past relevant work experience as a child care attendant, a home care provider, and a packager.  [AR at 62-63, 153.]

On September 16, 2008, plaintiff filed an application for Disability Insurance Benefits and protectively filed an application for Supplemental Security Income payments, alleging that she has been unable to work since October 2, 2007, due to spinal disease, high blood pressure, fainting, and an enlarged heart.  [AR at 69-70, 122-32, 151-58, 166-72.]  Plaintiff subsequently amended her applications to allege a period of disability from October 2, 2007, to January 7, 2010.  [AR at 190.]  After her applications were denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 74-78, 81-82.]  A hearing was held on April 28, 2010, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 37-68.]  A vocational expert also testified.  [AR at 62-66.]  On May 11, 2010, the ALJ determined that plaintiff was not disabled.  [AR at 21-31.]  On July 25, 2011, the Appeals Council denied plaintiff's request for review.  [AR at 1-5, 16.]  This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

2

as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

1  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

2  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

3  prima facie case of disability is established.  The Commissioner then bears the burden of

4  establishing that the claimant is not disabled, because she can perform other substantial gainful

5  work available in the national economy.  The determination of this issue comprises the fifth and

6  final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

7  n.5; Drouin, 966 F.2d at 1257.

8

9  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

10          In this case, at step one, the ALJ found that plaintiff engaged in substantial gainful activity

11  from May 2008 to November 2008, but that there was also "a continuous 12-month period(s)

12  during which [plaintiff] did not engage in substantial gainful activity" (i.e., from December 2008 to

13  January 7, 2010).  [AR at 23-24.][1]  At step two, the ALJ concluded that plaintiff has the severe

14  impairments of low back pain with radiculopathy into the left lower extremity, degenerative disc

15  disease, status post laminectomy, and obesity.  [AR at 24.]  At step three, the ALJ determined that

16  plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [Id.]  The ALJ

17  further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "light work"

18  as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b)[3] "in that she can exert up to 20 pounds of

19  force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force

20  constantly to move objects [and] can stand and walk up to 6 hours and sit up to 6 hours in an 8-

21  hour workday with normal breaks."  [Id.]  The ALJ further found that plaintiff "can perform work that

22

23     [1]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security
24  Act through December 31, 2013.  [AR at 23.]

25     [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
   limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26     [3]   20 C.F.R. §§ 404.1567(b), 416.967(b) define "light work" as work involving "lifting no more
27  than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and
   requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and
28  pulling of arm or leg controls."

does not require climbing ladders, ropes or scaffolds, or balancing, and no more than occasional climbing of ramps or stairs[,] stooping, kneeling, crouching, crawling, or twisting/turning from the waist;" and "can perform work that does not require any exposure to extreme vibration, hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions (i.e., syncope precautions)."  [AR at 24-25.]  At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a packager.  [AR at 29.]  Accordingly, the ALJ determined that plaintiff has not been disabled at any time from October 2, 2007, through May 11, 2010, the date of the decision.  [AR at 30-31.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ improperly: (1) evaluated the opinions of plaintiff's treating physicians, and (2) discounted plaintiff's credibility.  [Joint Stipulation ("JS") at 4-8, 11-17, 20-21.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIANS' OPINIONS**

Plaintiff contends that the ALJ improperly rejected the opinions of plaintiff's treating physicians.  [JS at 4-8, 11-12.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

1    Where a treating physician's opinion does not contradict other medical evidence, the ALJ

2    must provide clear and convincing reasons to discount it.  Lester, 81 F.3d at 830; see also

3    Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The administrative law judge is not bound

4    by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but

5    he cannot reject them without presenting clear and convincing reasons for doing so.") (internal

6    citation and quotations omitted).  Where a treating physician's opinion conflicts with other medical

7    evidence, the ALJ must set forth specific and legitimate reasons supported by substantial evidence

8    in the record to reject it.  Lester, 81 F.3d at 830; see also McAllister v. Sullivan, 888 F.2d 599, 602-

9    03 (9th Cir. 1989).  The ALJ can meet the requisite specific and legitimate standard "by setting out

10   a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

11   interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

12   The ALJ "must set forth his own interpretations and explain why they, rather than the [treating]

13   doctors', are correct."  Id.

14         The ALJ stated that he gave "[l]ittle weight" to treating physician Dr. James K. Styner's

15   opinion that plaintiff was "temporarily totally disabled" because: (1) "his opinion is colored by the

16   specter of bias in light of his role in [plaintiff's] pending workers' compensation litigation;" (2) "[his]

17   conclusions do not appear to be supported by the rest of the record;" (3) plaintiff's "earning records

18   show she worked during the second, third[,] and part of the fourth quarter of 2008 at the

19   substantial gainful activity level;" and (4) the ultimate issue of whether plaintiff was disabled during

20   the period of her alleged disability is reserved for the Commissioner.  [AR at 28.]

21         Similarly, the ALJ assigned "little weight" to the opinion of Dr. William Dillin -- plaintiff's

22   surgeon [AR at 540] -- that she was "temporarily totally disabled," because the ALJ found that

23   such opinion "does not appear to be supported by the record as a whole," specifically noting that

24   several months after her surgery, Dr. Dillin indicated that plaintiff was doing well and released her

25   to regular work.  [AR at 28, 534-38.]

26         Dr. Styner's and Dr. Dillin's opinions on the ultimate issue of whether plaintiff was disabled

27   during the alleged disability period conflicted with those of examining and State Agency physicians

28   who opined that plaintiff was able to perform some work between October 2, 2007, and January

6

7, 2010.  [AR at 27-28, 253-85, 393-98.]  Thus, the ALJ was required to give specific and legitimate reasons for rejecting and assigning little weight to the opinions of Dr. Styner and Dr. Dillin.  See McAllister, 888 F.2d at 602-03.  As set forth below, he failed to do so.

As to Dr. Styner, while the ALJ correctly stated that the determination of a claimant's ultimate disability is reserved to the Commissioner [see 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)], the ALJ was still required to give specific and legitimate reasons to reject the doctor's opinion that plaintiff was temporarily totally disabled during the relevant time period.  See McAllister, 888 F.2d at 602-03 (remand warranted where ALJ failed to give adequately specific and legitimate reasons for disregarding treating physician's testimony that the claimant was "fully disabled for employment" due to personality disorder).  As discussed infra, none of the ALJ's other reasons for rejecting Dr. Styner's opinions were legitimate.

The ALJ next rejected Dr. Styner's opinion on the ground that "his opinion is colored by the specter of bias in light of his role in [plaintiff's] pending workers' compensation litigation."  [See AR at 28.]  However, the ALJ pointed to no evidence of actual impropriety on the part of Dr. Styner. See Lester, 81 F.3d at 832 (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993)) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997)) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion).  The record contains no evidence that Dr. Styner embellished his assessments of plaintiff's limitations in order to assist her with her workers' compensation or Social Security benefits claims.  See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).  Thus, this was not a proper ground to reject Dr. Styner's opinion.

Third, the ALJ stated that Dr. Styner's opinion was not supported by "the rest of the record," including both "[his] own clinical data and diagnostic findings," as well as "the conservative course of treatment" he provided to plaintiff.  [AR at 28.]  As to his first elaboration on this ground, the ALJ

1    pointed out that while Dr. Styner deemed plaintiff temporarily totally disabled on November 20,

2    2008, just one month later -- on December 30, 2008 -- he indicated based on a physical

3    examination that plaintiff "only ha[d] occasional tenderness in the lumbar spine, right, some

4    decreased sensation and reflexes in the left leg, knees, and ankles and ha[d] normal motor

5    functioning, normal strength; no atrophy; full weight bearing; no joint deformities; and no need for

6    assistive devices."  [AR at 28, 384-87.]  There is significant evidence, however, to support Dr.

7    Styner's opinion that plaintiff was temporarily totally disabled as of November 20, 2008.  Dr. Styner

8    saw plaintiff monthly on average from August 2007, to December 2008.  [See AR at 244-45, 384-

9    87, 475-509.]  On August 28, 2007, Dr. Styner examined plaintiff and reported the following

10   objective findings: "[t]enderness upon palpatory testing medial right elbow, lumbar spine and right

11   ankle; [d]ecreased range of motion lumbar spine; [d]ecreased sensation left leg; [a]ntalgic gait left

12   leg; [p]ositive straight leg raising left with lumbar spasm, right with hamstring spasm; [d]ecreased

13   range of motion right ankle; [d]ecreased range of motion left knee; [s]welling left knee;

14   [t]enderness upon palpatory testing left knee; [p]ositive patella compression and patella crepitation

15   left knee."  [AR at 244-45.]  Nevertheless, he opined that plaintiff was able to "perform usual work."

16   [AR at 244.]  On October 2, 2007, Dr. Styner examined plaintiff again and found tenderness and

17   decreased range of motion in her lumbar spine.  [AR at 507-09.]  He also noted that an October

18   1, 2007, MRI of plaintiff's lumbar spine revealed, according to the interpreting physician, "a 2[]mm

19   central disk protrusion identified at the L2-3 level," and a "left lateral 3-4mm disk protrusion ...

20   which narrows the left lateral recess and left foramen and may impinge upon the left L5 nerve

21   root."  [AR at 507.]  Dr. Styner diagnosed plaintiff with "[m]yoligamentous strain of the lumbar spine

22   with radicular symptoms to the left, and with possible disc herniation at L2-3," per the October 1,

23   2007, MRI and opined that plaintiff was "temporarily totally disabled."  [AR at 508.]  In progress

24   reports from November 2007, December 2007, February 2008, March 2008, May 2008, June

25   2008, July 2008, August 2008, and October 2008, Dr. Styner continued to report upon examination

26   that plaintiff had tenderness and/or decreased range of motion in her lower back, rendered the

27   same diagnosis for her lumbar spine, and opined that she was "temporarily totally disabled."  [AR

28   at 475-93, 497-506.]  Moreover, on October 9, 2008, he referred plaintiff for a lumbar surgery

8

consultation, noting that neurodiagnostic studies from January 24, 2008, "demonstrate L5 radiculopathy on the left side," and that plaintiff "has had in review physical therapy, acupuncture, H-wave, pain management to include epidural injections, medications and creams, none of which have been satisfactory." [AR at 480.]  On November 20, 2008, Dr. Styner once again found decreased range of motion in plaintiff's lumbar spine, and stated that he "concur[red] with [another doctor's] recommendation for lumbar spine surgery since pain management approach did not significantly help this patient." [AR at 475-78.]  Furthermore, in the doctor's December 30, 2008, report -- which the ALJ found to contradict Dr. Styner's November 20, 2008, opinion that plaintiff was temporarily totally disabled -- Dr. Styner noted that plaintiff's response to treatment had been "poor," that his opinion concerning plaintiff's prognosis was "[g]uarded," and that plaintiff was "[a]waiting lumbar spine surgery." [AR at 385-86.]  Finally, Dr. Styner's monthly progress reports after December 2008 and until plaintiff's spine surgery on September 24, 2009, continued to reflect findings and opinions consistent with those in his earlier reports. [See AR at 451-71, 519-24, 540.]  Accordingly, the ALJ's conclusion -- that Dr. Styner's November 20, 2008, opinion concerning plaintiff's ability to work contradicted certain of the doctor's findings on December 30, 2008 -- ignores relevant evidence in the record, which was improper. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").   Similarly, the ALJ's characterization of Dr. Styner's treatment of plaintiff as "conservative" is unsupported.  Dr. Styner referred plaintiff for, among other things, multiple epidural injections and back surgery, all of which plaintiff received.  [See AR at 480, 492, 499.]  Dr. Styner's opinions were rendered on the basis of his review of plaintiff's MRIs and neurodiagnostic studies, as well as his own physical examinations of plaintiff over the course of more than two years.  It is improper to reject a treating physician's opinion where he provided at least some objective observations and testing in addition to subjective opinions.  See Embrey, 849 F.2d at 421; see also 20 C.F.R. §§ 404.1527, 416.927 (the proper weight that an ALJ should give to a treating physician's opinion depends on whether

1  sufficient data supports the opinion and whether the opinion comports with other evidence in the
2  record).
3      Finally, the ALJ rejected Dr. Styner's opinion because the ALJ found that plaintiff "worked
4  ... at the substantial gainful activity level" from May to November 2008, which he concluded
5  contradicted Dr. Styner's opinion that plaintiff was temporarily totally disabled during that time
6  period.  [AR at 23, 28.]  Federal regulations define substantial gainful activity ("SGA") as "work
7  activity that involves doing significant physical or mental activities," even if on a part-time basis or
8  even if duties, responsibilities, and pay are less than a claimant performed or received in the past.
9  20 C.F.R. §§ 404.1572, 416.972.   A claimant's earnings and working conditions guide the
10  determination of whether the work constitutes SGA.  See 20 C.F.R. §§ 404.1573, 404.1574,
11  416.973, 416.974; Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990) ("The concept of
12  substantial gainful activity involves the amount of compensation and the substantiality and
13  gainfulness of the activity itself.").   Under social security regulations, monthly earnings averaging
14  more than $940 in 2008 will generally be considered SGA.  See 20 C.F.R. §§ 404.1574(b)(2),
15  416.974(b)(2);  Social  Security  Administration  Substantial  Gainful  Activity  website  at
16  http://ssa.gov/oact/cola/sga.html.  However, when a claimant's earnings exceed "the reasonable
17  value of the work ... perform[ed]," the Administration considers only that part of her pay which she
18  "actually earn[s]." 20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2).  Similarly, a showing that work was
19  performed under "special conditions" can rebut a presumption of SGA.  See 20 C.F.R. §§
20  404.1573(c), 416.973(c); Katz v. Sec'y of Health & Human Servs., 972 F.2d 290, 293 (9th Cir.
21  1992) (citing id.).  Examples of such conditions include irregular work hours and the ability to take
22  frequent rest periods, as well as whether the claimant was "given the opportunity to work despite
23  [her] impairment because of family relationship."  See 20 C.F.R. §§ 404.1573(c), 416.973(c).
24      In 2008, plaintiff received $10,979.79 from the Los Angeles Unified School District
25  ("LAUSD") for unused sick time and vacation time.  [AR at 43, 142.]  Between the beginning of
26  2008 and October 2008, plaintiff also earned $8,400.00 from In-Home Supportive Services
27  ("IHSS") for care plaintiff provided to her mother.  [AR at 43-44, 59, 142.]  Finally, plaintiff earned
28  $478.00 in 2008 from Cambrian Homecare, for which she testified she only worked prior to March

1  2008. [AR at 59, 142.] The ALJ found that plaintiff's earnings in 2008 totaled $19,858.39, and that

2  she therefore engaged in SGA from May to November 2008.  [AR at 23.]

3  　　It is unclear whether the ALJ, in calculating plaintiff's monthly earnings in 2008, included

4  the Cambrian earnings, which plaintiff testified she received for work performed prior to March

5  2008 (i.e., before May 2008).  In any event, substantial evidence does not support the ALJ's

6  rejection of Dr. Styner's opinion on the ground that plaintiff "worked ... at the [SGA] level" in 2008.

7  First, the monies plaintiff received from the LAUSD in 2008 were not received for work that plaintiff

8  actually performed that year, but for unused sick time and vacation time from her work prior to

9  2008, and thus the ALJ should not have included that amount in analyzing whether plaintiff

10  actually was able to perform work in 2008.  See Yonts v. Barnhart, 2004 WL 1005690, at *2, *5

11  (N.D. Ill. May 4, 2004) (using plaintiff's average monthly earnings, not including vacation pay, to

12  determine whether she met the SGA threshold); Harding v. Apfel, 1999 WL 163383, at *4

13  (S.D.N.Y. Mar. 23, 1999) (noting that "[i]t is undisputed that [the plaintiff] has not engaged in

14  substantial gainful activity since September 11, 1985[, since] [m]onies he received in 1986 and

15  1987 from his employer represent deferred sick pay and vacation pay").  Next, plaintiff testified

16  that when she was taking care of her mother, plaintiff's responsibilities only consisted of "taking

17  [her mother] back and forth to her doctor's appointments." [AR at 56.]  Plaintiff testified that when

18  she was not "doing that," she would stay in bed and watch TV, and that she did not live with her

19  mother during that time.  [Id.]  Plaintiff also represented that she did not cook for her mother, but

20  that her mother cooked for herself.  [Id.]  Based on plaintiff's description of the in-home care she

21  provided for her mother, it appears that plaintiff was "allowed to work irregular hours or take

22  frequent rest periods," and may have been "given the opportunity to work despite [her] impairment

23  because of family relationship."  20 C.F.R. § 404.1573(c)(2), (6); 20 C.F.R. § 416.973(c)(2), (6).

24  Both of these characteristics are "special conditions" that could indicate the work plaintiff

25  performed for IHSS was not substantial gainful activity (see id.), but the ALJ neither mentioned

26  nor discussed them.  [See AR at 23-24.]  Thus, the ALJ's assumption that plaintiff "earned" the full

27  amount of monies she received from IHSS in 2008 is not supported by substantial evidence.  See

28  20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2); see also Castaneda v. Comm'r of Social Sec., 2011

1   WL 7299839, at **7-8 (E.D. Mich. Dec. 7, 2011) (ALJ's conclusion that the plaintiff was engaged
2   in SGA not supported by substantial evidence where the plaintiff's testimony, which the ALJ
3   improperly rejected, established that she was permitted to work irregular hours or take frequent
4   rest periods, among other things); Manning v. Comm'r of Social Sec., 2009 WL 243014, at **4-5
5   (S.D. Ohio Jan. 29, 2009) (where ALJ concluded that the plaintiff's earnings constituted SGA, but
6   failed to consider or discuss the special circumstances surrounding the plaintiff's past employment
7   corresponding to 20 C.F.R. § 404.1573(c), that conclusion was not supported by substantial
8   evidence).  As the ALJ's findings concerning plaintiff's earnings are supported by substantial
9   evidence only to the extent that plaintiff earned $478 (at some point in time) from Cambrian as well
10  as some amount from IHSS due to work she actually performed in 2008, it is not clear that
11  plaintiff's monthly earnings from actual work activity between May and November 2008 averaged
12  more than $940.  Thus, the ALJ's conclusion that plaintiff "worked ... at the [SGA] level" from May
13  to November 2008 was not a properly supported reason to reject Dr. Styner's opinion that plaintiff
14  was temporarily totally disabled during that period.

15          Similarly, the ALJ gave no legitimate reason to reject the opinion of Dr. Dillin, plaintiff's
16  surgeon.  The ALJ found that Dr. Dillin's opinion "[did] not appear to be supported by the record
17  as a whole" [AR at 28], presumably referring to the doctor's opinion on October 7, 2009, and
18  November 5, 2009, that plaintiff was temporarily totally disabled.  [See AR at 536-38.]  Specifically,
19  the ALJ pointed out that on December 16, 2009, Dr. Dillin opined that plaintiff was "doing well
20  postoperatively" and released plaintiff to her regular work.  [See AR at 28, 534-35.]  However, this
21  evidence identified by the ALJ is not a proper basis to conclude that Dr. Dillin's earlier opinion is
22  "not ... supported by the record as a whole," and the ALJ did not otherwise explain how Dr. Dillin's
23  opinion lacks support.  Moreover, the Court finds nothing unsupported about Dr. Dillion's opinion.
24  The medical evidence reflects that Dr. Dillin examined plaintiff on May 20, 2009, and referred her
25  for an MRI and a CAT scan of her lumbar spine.  [AR at 439-50.]  On July 15, 2009, following both
26  tests, Dr. Dillin saw plaintiff again, reviewed the MRI and CAT scan, and recommended that she
27  undergo lumbar spine surgery.  [See AR at 429-38.]  On September 24, 2009, Dr. Dillin performed
28  a modified microdiscectomy and a lateral recess resection on plaintiff's lumbar spine at left L5-S1,

as well as a left L5 hemilaminotomy.  [AR at 540-42.]  Thereafter, on October 7, 2009, and November 5, 2009, Dr. Dillin saw plaintiff and opined that she was temporarily totally disabled, referring her on the latter date for six weeks of physical therapy.  [See AR at 536-38.]  On December 16, 2009, when Dr. Dillin saw plaintiff again, he noted that she was "doing well postoperatively" and "not having her leg pain," that she had "progressed well on physical therapy," and that he was "going to return her to work." [AR at 534-35.]  Dr. Dillin's December 16, 2009, statements concerning plaintiff's condition and opinion that plaintiff was then able to work do not undermine his earlier opinions that plaintiff, in the first several months following her surgery, was temporarily totally disabled.  Moreover, insofar as the ALJ rejected Dr. Dillin's opinion concerning plaintiff's ability to work on the basis that such a determination is reserved to the Commissioner, the ALJ could only reject such an opinion with specific and legitimate reasons which, as discussed supra, he failed to give.

The ALJ did not properly reject Dr. Styner's and Dr. Dillin's opinions.  Remand is warranted on this issue.[4]

/

/

/

/

/

/

/

/

/

/

/

---

[4]      As the ALJ reached the RFC determination in part based upon his improper rejection of Dr. Styner's and Dr. Dillin's opinions, the Court exercises its discretion not to address plaintiff's second contention of error.

## VI.

### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider the opinions of Dr. Styner and Dr. Dillin.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 27, 2012

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE